UNITED STATES DISTRICT COURT
DISTRICT OF WESTERN LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | CASE NO. |
| Plaintiff, | |
| VERSUS | JUDGE |
| SHAE YATTA HARPER, | MAGISTRATE JUDGE |
| Defendant. | |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

**INTRODUCTION**

1. The Commission brings this action to enjoin Shae Yatta Harper ("Harper") from further violations of the registration provisions of the federal securities laws and from aiding and abetting violations of the antifraud provisions of the federal securities laws.

2. Between approximately April 2013 and August 2014, Kirbyjon Caldwell and Gregory Alan Smith raised at least $3,488,500 through a scheme to defraud approximately 29 investors through the fraudulent offer and sale of participation rights in certain historical Chinese bonds ("the bonds"). Among other material misstatements and omissions, Caldwell and Smith represented to these investors that the bonds were safe, risk-free, worth tens, if not hundreds, of millions of dollars, and could be sold to third parties. In reality, the bonds were mere collectible memorabilia with no investment value. At Caldwell's direction, Harper drafted participation agreements in the bonds that were sent to investors. Harper also controlled the bank account to which most investors sent their funds to invest in this investment opportunity, and distributed investor funds to Caldwell and Smith at their direction.

3.  Through her conduct as alleged in this Complaint, Harper violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c), and aided and abetted violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.  Unless the Court enjoins Harper, she is reasonably likely to continue to violate these provisions of the federal securities laws.

## DEFENDANT

4.  Harper, age 44, is a resident of Monmouth Junction, New Jersey.  Harper is an attorney licensed to practice in California, New Jersey, and the District of Columbia.  Harper is currently employed as a transactional attorney within the power and gas industry.

## OTHER RELEVANT PARTIES

5.  Caldwell, age 64, is a resident of Houston, Texas.  During the relevant period, Caldwell was the Senior Pastor at Windsor Village United Methodist Church (the "church"), one of the largest Protestant churches in the U.S.  He and his wife are the co-owners of LDT, LLC, ("LDT"), a Wyoming limited liability company formed by Harper in April 2013.

6.  Smith, age 55, is a resident of Shreveport, Louisiana.  Between December 1999 through July 2010, Smith was associated with New England Securities Corp, a registered broker-dealer.  In July 2010, Smith was permanently barred from association with any FINRA member in any capacity, in part for commingling investor funds in his business account and for misappropriating investor funds.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a); and Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa.

8. The Court has personal jurisdiction over the Defendant, and venue is proper in the Western District of Louisiana, because many of the Defendant's acts and transactions constituting violations of the federal securities laws occurred in the district.

9. In connection with the conduct alleged in the Complaint, the Defendant, by drafting the participation agreements in the bonds that were sent to investors and by distributing the funds as directed by Caldwell and Smith, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, or the mails.

## FACTUAL ALLEGATIONS

### A. Background and Mechanics of the Offering

10. From at least April 2013 until August 2014, Caldwell and Smith offered and sold to at least 29 investors participation rights in various historical or Pre-revolutionary Chinese bonds which Caldwell claimed to own, control, or possess. In some cases, Caldwell and Smith told investors that their funds would be used to purchase the bonds. Smith, who worked as a financial planner, was responsible for finding investors for this offering. He raised the money for this offering by promising investors exorbitant returns on their investment. Smith also represented to many investors that he was an "investment adviser" with many years of prior experience assisting others with their investments. He gave these investors investment advice concerning whether to invest in this scheme.

11. Smith was instrumental in securing investors for this scheme because he had longstanding ties to prospective investors and operated under the guise of an investment adviser with many years of experience advising clients on similar deals. In one case, Smith promised an investor that she would receive 15 times her original investment within 30 days and any funds she invested would be returned within 5 days of any demand for the funds. Once an investor agreed to invest, the investor was instructed to wire transfer payment to one of two bank accounts: a bank account solely controlled by Harper and titled in the name of her deceased mother (the "Estate of Alta Harvey Account") or an account held by LDT. Immediately after the investors sent the money, the investment funds were transferred to the personal accounts of Caldwell, Smith, or a Mexican business associate.

### B. The Material Misrepresentations and Omissions about the Bonds

#### 1. Background on Pre-Revolutionary Chinese Bonds

12. Prior to the 1949 communist takeover in China, the former republic issued billions of dollars' worth of government bonds. These bonds have been in default since 1939 and the current Chinese government refuses to recognize the debt. In 1970, the Foreign Claims Settlement Commission (FCSC) considered a claim to recuperate this debt under the International Claims Settlement Act of 1949. On March 18, 1970, the FCSC concluded in Decision No. CN-147 that because the bonds had been in default since 1939 (ten years prior to Chinese Communist assumption of power), the claims did not come under the purview of the Act. In May 2012, the U.S. Treasury issued a fact sheet confirming that it does not hold any pre-1949 Chinese bonds in its foreign exchanges.

#### 2. Misrepresentations and Omissions

13. Smith was successful in raising money for this offering by promoting the deal as something that he was offering to only a few select individuals. Smith falsely told some of the investors that the money raised would be used to acquire more Chinese bonds. He repeatedly told investors that the bonds were "risk free," "guaranteed," and "safe" and that there were buyers lined up to purchase the bonds. Smith also told investors that the bonds would either be sold to a third party or redeemed by the Chinese government. Caldwell also made similar material misrepresentations to several investors, including that the return on investment was guaranteed. In fact, he even told one investor who invested approximately $800,000 that the bonds were backed by gold or silver. Both Smith and Caldwell falsely told investors that the bonds were valuable and worth tens, if not hundreds, of millions of dollars. Harper never directly communicated with any investors and therefore did not make any misstatements or omissions to them.

14. Although many investors did not understand the investment, they ultimately trusted Smith and had faith in the fact that a high-profile pastor was offering the investment. Among other things, Smith falsely represented to investors that he too had invested in the bonds and that investors were guaranteed a return on investment which would be repaid in less than one year. In one case he promised a return on investment in as little as 30 days. However, Smith failed to tell these investors that these bonds had already matured and had been in default for decades, or that they were not redeemable at all. Smith also failed to disclose that he was receiving compensation for recommending the investment to prospective investors.

### 3. The Participation Agreements

15. Once Smith found investors for the offering, Caldwell directed Harper to draft a participation agreement containing the terms of the investment. The participation agreements

usually included the investment amount, a vague description of the bond, an exorbitant return on investment, a profit-sharing provision, depository bank information, and a "failure to close" option pursuant to which the investor could request his or her money back in the event Caldwell was unable to sell the bonds. Most of the participation agreements given to investors generally described the bonds as "historical Chinese Bonds." Harper earned $5,100 in legal fees for drafting the participation agreements.

16. Under the terms of the participation agreements, the investors' expectation of a return on their investment was based solely upon Caldwell's ability to sell the bonds to a third party purchaser. In fact, many of the participation agreements expressly stated that Caldwell was in control and possession of the bonds and that he planned to sell the bonds to third party purchasers. This offering was not registered with the Commission. Furthermore, most of the investors who invested in this scheme were not accredited. In fact, many were unsophisticated retirees who liquidated their annuities to invest in this scheme pursuant to Smith's advice.

C. **Harper's Involvement in the Fraudulent Offering**

17. Caldwell was Harper's pastor and a close family friend. Between approximately April 2013 and August 2014, Harper drafted the participation agreements provided to investors for which she was paid attorney's fees totaling approximately $5,100. Harper also controlled a bank account which received and distributed investor funds to Caldwell and Smith. By controlling this account, and distributing investor funds to Caldwell and Smith, Harper substantially assisted their fraudulent scheme. In doing so, Harper did not sufficiently investigate red flags indicating that the transactions might be fraudulent. For example, during a trip to Europe with Caldwell, an individual discussed the bonds with Harper and questioned whether the potential buyers were real and the bonds valuable. Several of Harper's attorney

friends also expressed doubt as to the value of the bonds. Harper also read an article that questioned the value of the bonds.

18. Harper invested $5,000 of her own money in this investment scheme in or around March 2013. Despite the presence of the red flags described above, Harper did not ask Caldwell for the return of her investment.

## CLAIMS FOR RELIEF

## COUNT I

### Violations of Sections 5(a) and (c) of the Securities Act

19. The Commission repeats and realleges Paragraphs 1 through 18 of its Complaint.

20. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions described in this Complaint and no exemption from registration existed with respect to these securities and transactions.

21. Between approximately April 2013 and August 2014, Harper, a substantial and necessary participant in the unregistered sale of the securities, directly and indirectly:

    (a)    Made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities as described herein, through the use or medium of a prospectus or otherwise;

    (b)    Carried securities or caused such securities, as described herein, to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

    (c)    Made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of a prospectus or otherwise, as described herein, without a registration statement having been filed or being in effect with the Commission as to such securities.

22. By reason of the foregoing, Harper violated and, unless enjoined, is reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C § 77e(a) and 77e(c).

## COUNT II

### Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

23. The Commission repeats and realleges Paragraphs 1 through 18 of its Complaint.

24. Between approximately April 2013 and August 2014, Harper, directly or indirectly, knowingly or recklessly provided substantial assistance to persons who, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of a security, with scienter, used the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange: (1) to employ devices, schemes, or artifices to defraud; (2) to make untrue statements of material facts or omit to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (3) to engage in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

25. By reason of the foregoing, Harper aided and abetted and, unless enjoined, is reasonably likely to continue to aid and abet, violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## COUNT III

### Aiding and Abetting Violations of Sections 17(a) of the Securities Act

26. The Commission repeats and realleges Paragraphs 1 through 18 of this Complaint.

27. Between approximately April 2013 and August 2014, Harper, directly or indirectly, knowingly or recklessly provided substantial assistance to persons who, directly or indirectly, singly or in concert with others, in the offer or sale of a security, used the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange: (1) to knowingly or recklessly employ devices, schemes, or artifices to defraud; (2) to negligently obtain money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (3) to negligently engage in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of the securities.

28. By reason of the foregoing, Harper aided and abetted and, unless enjoined, is reasonably likely to continue to aid and abet, violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Permanent Injunctive Relief

Issue a permanent injunction restraining and enjoining Harper, and her officers, agents, servants, employees, attorneys, representatives, and all persons in active concert or participation with them, and each of them, from violating the federal securities laws alleged in this complaint.

### II.

### Civil Penalties

Issue an Order directing Harper to pay a civil money penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

## III.

## Further Relief

Grant such other further relief as may be necessary and appropriate.

## IV.

## Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

March __, 2018

Respectfully submitted,

*Wilfredo Fernandez*

WILFREDO FERNANDEZ, FL BAR #142859
TRIAL ATTORNEY
ANDRE ZAMORANO, FL BAR #967361
JACQUELINE M. O'REILLY, FL BAR #29326
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4146
fernandezw@sec.gov
zamoranoa@sec.gov
oreillyj@sec.gov
Attorneys for Plaintiff

ALEXANDER C. VAN HOOK
UNITED STATES ATTORNEY
WESTERN DISTRICT OF LOUISIANA

/s/ *Katherine W. Vincent*
KATHERINE W. VINCENT #18717
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501-6832
Telephone: (337) 262-6618
Facsimile: (337) 262-6693
Katherine.Vincent@usdoj.gov
Local Counsel

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.